FILED
10/15/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 3, 2020 Session

## JAMES JUSTICE v. PAUL GAITER ET AL.

**Appeal from the Circuit Court for Williamson County
No. 2017-CV-686   Joseph A. Woodruff, Judge**

———————————————————

### No. M2019-01299-COA-R3-CV

———————————————————

This appeal arises from a motor vehicle accident in a shopping center complex during the Christmas season. Plaintiff appeals the jury's finding that he was sixty percent at fault for the accident and the trial court's denial of his motion for a new trial. Finding that the jury's apportionment of fault is supported by material evidence and that the trial court did not abuse its discretion in denying the motion for a new trial, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. RICHARD H. DINKINS, J., not participating.

Drew Justice, Murfreesboro, Tennessee, for the appellant, James Justice.

Paul Gaiter, Nashville, Tennessee, Pro Se.

Jason A. Lee and Laura E. Bassett, Nashville, Tennessee; and Jeffrey R. Kohl, Oklahoma City, Oklahoma, for the appellee, Mid-Century Insurance Company.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

The motor vehicle accident occurred on December 23, 2016, in Williamson County, near the Cool Springs Galleria shopping complex. Paul Gaiter ("Defendant") was attempting to drive from one parking lot to another across Seaboard Lane, which separated the parking lots. Defendant, who had pulled into the road after being allowed by the cars in the lanes closest to him, was moving his vehicle into the lane occupied by James Justice ("Plaintiff") when the two vehicles came into contact. The nature of the contact and extent

of the damage is disputed. It is undisputed that neither vehicle's airbags were deployed.

Plaintiff filed suit against Defendant, alleging negligence and negligence per se, and requesting $150,000 in compensatory damages. Believing that Defendant had no insurance or that his insurance coverage was insufficient to satisfy the claim, Plaintiff provided notice to his uninsured motorist coverage carrier, Mid-Century Insurance Company. Defendant and Mid-Century each filed answers denying liability and raising the defense of comparative fault.

The jury trial took place on May 6 and 7, 2019. The jury found both parties were at fault and assessed 60 percent of the fault to Plaintiff and 40 percent of the fault to Defendant and awarded no damages. The court accepted the verdict and entered judgment in favor of Defendant.

Plaintiff then filed a "Motion for Judgment Notwithstanding the Verdict and/or New Trial," requesting that the court grant a directed verdict in his favor as to liability. Plaintiff asserted that the court improperly instructed the jury on comparative fault; that the weight of the evidence supported his position and the verdict was not supported by substantial and material evidence; that the court improperly restricted voir dire of jurors; that Defendant's counsel improperly impeached Plaintiff when he was allowed to cross-examine him about a subsequent accident; and that the court improperly restricted Plaintiff's testimony about a prior accident. The court denied Plaintiff's motion on June 19, 2019.

Plaintiff appeals, stating the issue for our review as follows: "Did the Defendant prove with material evidence that the Plaintiff was comparatively 'at fault,' or should the Plaintiff receive a directed verdict on the issue of liability or a new trial altogether?" For its issue, Mid-Century states, "Plaintiff is not entitled to overturn a jury verdict with an allocation of comparative fault with the facts of this case."

**ANALYSIS**

I. THE JURY'S ALLOCATION OF FAULT

Plaintiff argues on appeal that there was no material evidence for the jury's finding that he was 60 percent at fault and that Defendant failed to carry his burden of proving comparative fault.

Allocation of fault is a factual determination for the jury. The Tennessee Supreme Court has set out the standard for reviewing jury findings as follows:

In reviewing the sufficiency of a civil jury verdict, we will set aside findings

of fact by a jury only if there is *no* material evidence to support the verdict. To determine whether there is such material evidence, we (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence. We do not re-weigh the evidence and do not recalibrate the jury's preponderance of the evidence assessment. The credibility of witnesses is the province of the jury, not appellate courts.

*Ferguson v. Middle Tennessee State Univ.*, 451 S.W.3d 375, 380 (Tenn. 2014) (internal quotations and citations omitted) (emphasis added).

"Material evidence is 'evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case.'" *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013) (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905)). The *materiality* of the evidence should not be confused with the *weight* of the evidence.

It matters not a whit where the weight or preponderance of the evidence lies under material evidence review. . . . Because the material evidence standard lies at the foundation of the right to trial by jury, if there is material evidence to support a jury verdict, the appellate courts must affirm it.

*Id*. at 423 (internal quotations and citations omitted).

The evidence presented in this case, as related to the issue on appeal, consists of the testimony of Plaintiff and Defendant and of photos showing the damage to the vehicles of both parties. At trial, Plaintiff testified that he was "sitting in the traffic . . . [which was] virtually stopped when he saw Defendant 'barreling down' on him from the left." Plaintiff further testified:

Q.    Could you tell if he was braking or anything to that effect?

A.    I couldn't tell if he was braking. It appeared that he was accelerating to try to get between the cars.

Q.    And so as best you could tell, what did it look like he was trying to do?

A.    It looked like he was trying to come through the two lanes of traffic.

And it appeared, when I saw it, that the other lane of traffic, which was on my left, going the opposite direction, had stopped to let him through. At that point in time he accelerated and hit me.

Q.     What was your thought process when you saw him coming at you?

A.     I thought I was going to die.

Q.     Okay. Now, did your—did he actually collide with your vehicle?

A.     Yes.

Q.     Where did he hit your vehicle?

A.     He hit me in the driver's side door, right—right in front of my face.

Q.     And did he just hit the driver's side door and stop right there?

A.     He hit the driver's side door. The window—my window shattered. Glass flew everywhere. And then he—it appeared that he kind of slid down my side.

Q.     And by slid down your side, what do you mean by that?

A.     Well, when he struck me, he was apparently maybe trying to turn off to the right a little bit, and continued to go down the side of my car.

.     .     .

Q.     And then you also took the photo of the—toward the back of your car. What is that showing?

A.     That he went down the side of the car. He may have bounced off my car and continued on. I don't know exactly what happened.

Q.     Okay.

A.     Other than that[,] the fact that I was hit broadside.

Conversely, Defendant testified that he was sitting still when the collision took place:

[My girlfriend and I] were coming out of the [Target] parking lot and going to the parking lot adjacent to the Target parking lot. And there was traffic everywhere. And just from the driver, I guess, that was right in front of us,

- 4 -

she was just courteous, and she let me into the lane. So, I went into the lane, but I came to a complete stop because I could not see the traffic on the—on the other side. I know there was not a car that was stopped in the—in the next lane, but I couldn't see cars that were oncoming. So, I kind of stuck the front end of my car out into the street just to see a little bit better and in hopes that if someone was coming, they would see me, too. And I came to a complete stop again because I still could not completely see. At that point, that's when I did see the car coming. And I had time enough to be like, pretty much, What the—like, this is not going to happen. And that's when the collision occurred.

Defendant denied hitting Plaintiff's vehicle squarely in the side, broadsiding or "T-boning" him. He testified that "[i]t was like we met at like a corner" and that Plaintiff "struck the passenger side of my car first." The photographic exhibits entered by the parties showed scraping along the side of Plaintiff's vehicle. The scraping appears down the length of the driver-side front door, and there are also scrape marks on the driver-side rear tire and driver-side rear fender. Photos of Defendant's vehicle show damage across the front of the car, primarily but not exclusively from the middle to the passenger side.

Taking the strongest view of the evidence in support of the verdict and affording reasonable inferences to sustain it, the photographs showing the scraping on Plaintiff's car from the driver's side door to the rear fender support an inference that Plaintiff was in motion when the vehicles collided, supporting Defendant's testimony. Without reweighing the evidence or the credibility of the testimony, we conclude that Defendant's testimony constitutes material evidence to support the finding of comparative fault.

## II. MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR NEW TRIAL

We now turn to whether the trial court abused its discretion in denying Plaintiff's motion for a new trial. Our Supreme Court has stated that because the trial judge hears the testimony of the witnesses and can observe their demeanor, the judge is obligated to serve as the "thirteenth juror" by weighing the evidence; and if the judge is dissatisfied with the verdict, she must set it aside. *See Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 308 (Tenn. 2017). When exercising this role in addressing a motion for a new trial, the trial judge has broad discretion. Even if the judge gives no explanation for her decision, the appellate court will presume that the judge has adequately performed her function. *Id*.

In denying Plaintiff's Motion for a Judgment Notwithstanding the Verdict and/or New Trial, the trial court made the following findings:

Plaintiff argues "there was simply no evidence of negligence by the

- 5 -

Plaintiff." This is not so.

Both parties introduced photographic evidence of the damage to their respective vehicles. Plaintiff and Defendant both testified, giving the jury their divergent versions of the events. The question of whether Defendant collided with Plaintiff in a modified "T-Bone" crash as Plaintiff argued, or whether Plaintiff failed to avoid hitting the right front corner of Defendant's car while it was stopped partially in Plaintiff's lane of travel, was for the jury to decide.

It did.

The jury's verdict is not "contrary to the weight of the evidence."

.    .    .

Plaintiff takes issue with the jury's evident decision to credit Defendant's testimony rather than the contrary testimony of Plaintiff.

.    .    .

Questions of credibility are the exclusive province of the jury. Because the photograph evidence corroborates Defendant's description of how the collision happened, the Court cannot find the jury's determination of the facts to be contrary to the weight of the evidence.

Because there was material evidence to support the jury's verdict, we conclude that the trial court did not abuse its discretion in denying Plaintiff's motion.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects. Costs of appeal are assessed against James Justice.

_____
FRANK G. CLEMENT, JR., P.J., M.S.